**JUDGE SCHEINDLIN**

08 CV 6757

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
FAIRPORT SHIPPING LIMITED
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Owen F. Duffy (OD-3144)
Andrew J. Warner (AW-5534)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

FAIRPORT SHIPPING LIMITED

                Plaintiff,

  v.

GLOBAL DOMINION S.A., and LEADING
FINANCE S.A.

                Defendants.
-----------------------------------------------------------------X


RECEIVED
JUL 29 2008
U.S.D.C. S.D.N.Y.
CASHIERS

08 CV _____ ( ___ )

**VERIFIED COMPLAINT**

      Plaintiff FAIRPORT SHIPPING LIMITED (hereinafter "FAIRPORT"), by its attorneys, Chalos, O'Connor & Duffy, as and for its Verified Complaint against the Defendants, GLOBAL DOMINION S.A. and LEADING FINANCE S.A. (hereinafter "GLOBAL" and "LEADING" respectively), alleges upon information and belief as follows:

### JURISDICTION

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333. This case also falls within the ambit of this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that the action

arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. § 201 *et. seq.* and/or the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*

## THE PARTIES

2.  At all times material hereto, Plaintiff FAIRPORT SHIPPING LIMITED was and still is a foreign business entity duly organized and existing pursuant to the laws of Liberia with a principal place of business at 17A Kondyli Str., Glyfada 16675, Greece.

3.  At all times material hereto, Plaintiff FAIRPORT was and is engaged in business as a manager of ocean-going vessels, providing commercial, technical and operational services to the Owners of ocean-going vessels pursuant to ship management agreements in exchange for payment of management fees and other charges.

4.  At all times material hereto, Defendant GLOBAL DOMINION S.A. was and still is a foreign business entity duly organized and existing pursuant to the laws of Panama with a registered agent and principal place of business in Panama, in care of Vives y Asociados whose offices are located at P.H. Proconsa II Building, 8th Floor, Panama, Republic of Panama.

5.  At all times material hereto, Defendant GLOBAL was and is the registered owner of the M/V TROY, which is an ocean going bulk carrier vessel that is registered in Panama.

6.  At all times material hereto, Defendant LEADING FINANCE S.A. was and still is a foreign business entity duly organized and existing pursuant to the laws of Panama with registered agent and principal place of business in Panama, in care of Vives

y Asociados whose offices are located at P.H. Proconsa II Building, 8th Floor, Panama, Republic of Panama.

## AS AND FOR A CAUSE OF ACTION
## FOR BREACH OF A SHIP MANAGEMENT CONTRACT

7. By a contract dated June 1, 2005, the Plaintiff FAIRPORT, as manager, and the Defendant GLOBAL, as owner of the M/V TROY, entered into a BIMCO Standard Ship Management Agreement (hereinafter the "SHIPMAN" Agreement) whereby FAIRPORT was to manage the M/V TROY, *i.e.* provide commercial and technical management services and operate the M/V TROY, for Defendant Global.

8. In accordance with the SHIPMAN contract, the Defendant GLOBAL agreed to pay annual management fees at a rate of $250.000 per day, and the SHIPMAN contract contained other provisions whereby the Defendant GLOBAL was to pay other monies to Plaintiff FAIRPORT such as commissions on charter parties, expenses incurred on behalf of the vessel Owner, Defendant GLOBAL, certain out of pocket expenses and redundancy costs.

9. The SHIPMAN contract is a maritime contract.

10. Pursuant to the terms of the SHIPMAN contract, Plaintiff FAIRPORT provided management services for the M/V TROY and Plaintiff FAIRPORT incurred other expenses on behalf of the vessel Owner, Defendant GLOBAL, for which reimbursement was required under the express terms of the SHIPMAN contract.

11. On October 17, 2007, the Plaintiff FAIRPORT exercised its right to terminate the SHIPMAN contract as a consequence of repudiatory breaches on the part of Defendant GLOBAL for non-payment of invoices as presented by the Plaintiff FAIRPORT in accordance with the terms of the SHIPMAN contract.

3

12. At the present time, the Plaintiff FAIRPORT is no longer managing the M/V TROY, but there are still management fees in the amount of US$63,000.00 which are owed by the Defendant GLOBAL and other outstanding expenses of US$43,995.00 that have been incurred by the Plaintiff FAIRPORT on behalf of the Defendant GLOBAL.

13. Despite due demand, and despite the fact that Plaintiff FAIRPORT performed all of its obligations under the SHIPMAN contract, the Defendant GLOBAL has failed to pay the outstanding management fees and the other expenses referred to herein at ¶ 12.

14. The failure of the Defendant GLOBAL to pay the outstanding management fees and to pay the outstanding invoices is a breach of the SHIPMAN contract.

15. An aggregate amount of US$106,995.00 remains due and owing from the Defendant GLOBAL to Plaintiff FAIRPORT under the terms and conditions of the SHIPMAN agreement.

16. The maritime contract between the FAIRPORT and defendant GLOBAL, *i.e.* the SHIPMAN agreement, provides that any disputes arising out of the said maritime contract shall be governed by English law and shall be referred to arbitration in London.

16. In accordance with the terms and conditions of the maritime contract, the Plaintiff FAIRPORT is, or will be, initiating arbitration proceedings against the Defendant GLOBAL in London to recover the outstanding management fees and other amounts due and owing under the SHIPMAN agreement.

17. Under English law, including but not limited to § 63 of the English Arbitration Act of 1996 and/or the London Maritime Arbitration Association's rules, costs, including attorneys' fees, arbitrator's fees, disbursements and interest are recoverable damages in arbitration and such damages are routinely awarded to the prevailing party in London arbitration.

18. As best as can now be estimated, FAIRPORT expects to recover the following amounts in London arbitration from the defendant GLOBAL:

| | | |
|---|---|---|
| A. | Principal claim<br>(Breach of the SHIPMAN agreement) | $ 106,995.00 |
| B. | Estimated interest on claims:<br>3 years at 8%, compounded quarterly | $ 28,701.00 |
| C. | Estimated attorneys' fees: | $ 50,000.00 |
| D. | Estimated arbitration costs/expenses: | $ 20,000.00 |
| **Total** | | **$ 205,696.00** |

### AS A SECOND CAUSE OF ACTION AGAINST LEADING FINANCE S.A. BASED UPON ALTER-EGO LIABILITY

19. At all material times, there existed such unity of ownership and interest between Defendant GLOBAL and Defendant LEADING, that no separation exists between them and the corporate form of Defendant GLOBAL has been disregarded such that Defendant GLOBAL primarily transacts the business of Defendant LEADING, and this is specifically so with respect to the operation of the Defendant GLOBAL's vessel, the M/V TROY.

20. Upon information and belief, at all material times, Defendant LEADING operated in the name of Defendant GLOBAL, such that Defendant LEADING was the beneficial owner of GLOBAL and the M/V TROY.

21. Both the Defendant GLOBAL and the Defendant LEADING are beneficially owned by the same person, namely, Mohamed Arfan Zeido, a resident of Syria and it was Mohamed Arfan Zeido who incorporated both the Defendant GLOBAL and the Defendant LEADING in Panama.

22. Mohamed Arfan Zeido had, and retains, custody of all the share certificates for both the Defendant GLOBAL and the Defendant LEADING.

23. Upon information and belief, GLOBAL is simply an alias of LEADING and/or *vice versa*.

24. As between GLOBAL and LEADING there is a commonality of control and management in that the companies have a complete overlap of ownership, officers, directors and employees.

25. Upon information and belief, at all material times, Defendant GLOBAL and Defendant LEADING did not operate at arms length.

26. At all material times, there has been an intermingling of funds between Defendant GLOBAL and Defendant LEADING and this was especially so with respect to the M/V TROY in that all money transfers for both companies were controlled and executed by the Defendant LEADING and the Defendant LEADING is understood to have secured the debts owed by the Defendant GLOBAL in respect of such things as bank loans and the opening of bank accounts.

27. The Defendant GLOBAL utilizes the Defendant LEADING to transfer and receive funds being paid in United States dollars through the Southern District of New York on its behalf.

28. Upon information and belief, at all material times, Defendant LEADING dominated, controlled and used Defendant GLOBAL for its own purposes such that there was, and is, no meaningful difference between the two entities.

29. There are sufficient reasonable grounds to create an inference that Defendant LEADING is the alter-ego of Defendant GLOBAL and, therefore, Plaintiff FAIRPORT has a valid prima facie *in personam* maritime claim against Defendant LEADING based upon alter-ego liability.

30. The Defendant LEADING is liable, on a theory of alter ego, for the full amount of the maritime claim that is asserted against the Defendant GLOBAL as set forth in ¶ 18 of this Verified Complaint.

## PRAYER FOR RELIEF

31. Notwithstanding the fact that the liability of the contractual defendant and the alter ego defendant is subject to determination by arbitration in London, there are now, or will be during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to or claimed by the defendant within this District and held by various parties, as garnishees.

32. The Plaintiff FAIRPORT has sufficient reason to believe that some of the Defendants' assets, *to wit*: bank accounts; payments of freight and/or hire in U.S. dollars from other charterers or shippers of cargo; and/or Clearing House Interbank Payment

System (CHIPS) credits; and/or operational funds being transferred through intermediary banks in the form of electronic payment transfers (i.e. "EFT"s) are located in this District in the possession of several garnishees, namely banks or financial institutions located in New York that process EFTs.

33.     As set forth in the accompanying affidavit of Owen F. Duffy, the Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure.

34.     Because this Verified Complaint sets forth an *in personam* maritime claim against the defendants and because the defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure, the requirements for the issuance of Rule B Process of Maritime Attachment and Garnishment are met and the Plaintiff seeks the issuance of process of maritime attachment so that it may obtain security for its claims against the defendant and/or *quasi in rem* jurisdiction over the property of the defendant so that an eventual arbitration award and/or judgment on the award can be satisfied.

WHEREFORE, Plaintiff prays as follows:

A.     That the defendants be summoned to appear and answer this Verified Complaint;

B.     That the defendants not being found within this District, as set forth in the Affidavit of Owen F. Duffy, then all of their assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to or claimed by the defendants within this District up to the amount

sued for herein be attached pursuant to Supplemental Rule B and restrained by the garnishees of the Defendants to pay Plaintiff's damages;

  C. That this Court retain jurisdiction over this matter through the entry of an arbitration award by the London arbitration panel and/or, if necessary, a judgment from this Court confirming the arbitration so that judgment may be entered in favor of Plaintiff for the amount of its claim with costs, *i.e.* **US$205,696.00**, and that a judgment of condemnation and sale be entered against the property restrained and attached herein in the amount of Plaintiff's claim, plus costs to be paid out of the proceeds thereof; and

  D. That Plaintiff has such other and further relief as the Court may determine to be just and proper under the circumstances.

Dated: Port Washington, New York
   July 29, 2008

              CHALOS, O'CONNOR & DUFFY, LLP
              Attorneys for Plaintiff,
              FAIRPORT SHIPPING LIMITED

By: _____
    Owen F. Duffy (OD-3144)
    Andrew J. Warner (AW-5534)
    366 Main Street
    Port Washington, New York 11050
    Tel: (516) 767-3600
    Fax: (516) 767-3605

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
FAIRPORT SHIPPING LIMITED
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Owen F. Duffy (OD-3144)
Andrew J. Warner (AW-5534)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FAIRPORT SHIPPING LIMITED

                Plaintiff,

                08 CV _____ (____)

   v.

                **VERIFICATION**

GLOBAL DOMINION S.A., and LEADING
FINANCE S.A.,

                Defendants.
------------------------------------------------------------X

Pursuant to 28 U.S.C. § 1746, Owen F. Duffy, Esq., declares under the penalty of perjury:

    1.    That I am a partner in the law firm of Chalos, O'Connor & Duffy LLP, counsel for the Plaintiff, FAIRPORT SHIPPING LIMITED, herein;

    2.    That I have read the foregoing complaint and know the contents thereof;

    3.    That I believe the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its agents, underwriters and attorneys; and

    4.    That the reason that this verification was made by deponent and not by the Plaintiff is because Plaintiff is a foreign corporation, whose officers' verification could not be obtained within the time constraints presented by the circumstances of this case.

Dated: Port Washington, New York
      July **29**, 2008

                                    CHALOS, O'CONNOR & DUFFY, LLP
                                    Attorneys for Plaintiff,
                                    FAIRPORT SHIPPING LIMITED

By:      */s/ Owen F. Duffy*
                Owen F. Duffy (OD-3144)
                366 Main Street
                Port Washington, New York 11050
                Tel:  (516) 767-3600
                Fax:  (516) 767-3605
                ofd@codus-law.com