UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

FAIRPORT SHIPPING LIMITED,

                **Plaintiff,**

        - against -

GLOBAL DOMINION S.A. and
LEADING FINANCE S.A.,

               **Defendants.**

------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/14/09

**MEMORANDUM OPINION
AND ORDER**

**08 Civ. 6757 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

      Fairport Shipping Limited ("Fairport") filed this action on July 29,

2008 and obtained an ex parte order of maritime attachment and garnishment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime

Claims of the Federal Rules of Civil Procedure.  On August 5, 2008, this Court

ordered the attachment of up to $170,696 of defendants Global Dominion S.A. and

Leading Finance S.A.'s (collectively "Global") assets.[1]  Global now moves

pursuant to Rule E(7) for counter-security in the amount of $6,634,513.14, or

---

[1]    In its Complaint, Fairport alleged that Global Finance S.A. and
Leading Finance S.A. are alter egos.  *See* First Amended Verified Complaint ¶ 32.

alternatively to vacate the Attachment Order entered on August 5, 2008 ("8/5/08

Order"). For the following reasons, Global's motion is granted and counter-

security is ordered in the amount of $1,218,985.30.

## II.    BACKGROUND[2]

### A.    Facts

This dispute involves a claim for breach of a ship management

agreement, the merits of which are currently being arbitrated in London. In June

2005, Global entered into a contract with Fairport to manage the M/V TROY

("Vessel") for a period of one year, and to continue thereafter at the will of the

parties. Under the management agreement, Fairport was responsible for the

general upkeep of the Vessel, including maintaining compliance with the laws of

any country in which the Vessel traded.

In 2005, Fairport recommended that the Vessel undergo major repairs

in preparation for inspections in connection with renewal of the Vessel's

Classification and Trading Certificates.[3] Between April and June 2005, the Vessel

underwent repairs in Iliychevsk, Ukraine, for which Global claims it was invoiced

---

[2]     The facts are drawn from the submissions of the parties and are undisputed unless otherwise noted.

[3]     Fairport apparently made its recommendation prior to the parties entering into the ship management agreement.

$1,100,000.  On May 8, 2006, the Vessel was surveyed by its classification society in Hamburg, Germany.  The surveyor recommended extensive repairs to areas of the Vessel that had allegedly been repaired at Iliychevsk under Fairport's supervision.

On May 19, 2006, Global chartered the Vessel to Sealift N.V. ("Sealift").  Approximately one year later, on June 8, 2007, the Vessel was detained by authorities in Antwerp, Belgium for a variety of deficiencies, many of which related to areas of the Vessel purportedly repaired at Iliychevsk.  The Vessel was restricted from further trading, but permitted to perform a single voyage to the Port of Piraeus, Greece to undergo the necessary repairs.  As a result of the Vessel's detention, Global was forced to terminate its charterparty with Sealift on August 15, 2007.  Both Global and Fairport claim that they terminated the ship management agreement on October 10, 2007.

**B.    Procedural History**

Fairport filed the present action on July 29, 2008, seeking $63,000 in unpaid management fees, $43,995 in non-reimbursed expenses, and $67,901 in interest, costs, and fees relating to the pending London Arbitration.  Pursuant to this Court's 8/5/08 Order, Fairport attached $84,000 in funds belonging to Global's alleged alter ego, Leading Finance S.A.  On March 12, 2009, Global filed

3

a motion to vacate or reduce the attachment and to compel counter-security in the

amount of $1,081,422. This Court denied Global's motion on April 24, 2009, but

granted Global leave to renew its motion for counter-security upon its filing of an

answer and counterclaim.

Global finally filed its Answer on May 6, 2009, and asserted a

counterclaim against Fairport for $6,634,513.34.[4] Global seeks reimbursement

for: (1) $325,000 it paid to mitigate Sealift's losses following Global's termination

of its charterparty with Sealift on August 15, 2007; (2) $714,000 in hire that

Sealift refused to pay while the Vessel was detained at Antwerp; (3) $1,680,000 in

lost income while the Vessel was undergoing repairs at Piraeus; and (4)

$2,024,482.66 for repairing the deficiencies identified in the reports of the

surveyor at Hamburg and the inspector at Antwerp.[5]

## III.   LEGAL STANDARD

Rule E(7) allows defendants to seek counter-security when a

"counterclaim . . . arises from the transaction or occurrence that is the subject of

---

[4]     *See* Answer and Counterclaim ("Def. Ans.") ¶ 31.

[5]     *See id.* ¶¶ 21-24. Global also seeks $1,141,030.48 in interest —
calculated at 7.25 percent per year, compounded quarterly for three years — and
$750,000 in costs. *See id.* ¶ 30.

4

the original action."[6]  A district court has broad discretion in deciding whether to

order counter-security.[7]  "In exercising this discretion, the court should be guided

primarily by two principles, which sometimes conflict with one another."[8]  *First*,

the court should aim "to place the parties on an equality as regards security."[9]

*Second*, the court should avoid "impos[ing] burdensome costs on a plaintiff that

might prevent it from bringing suit."[10]  In other words, "the court must weigh the

importance of the security interest giving rise to the initial seizure, and the burden

of posting countersecurity, against the potential injustice of requiring the

defendant-counterclaimant to post security without affording reciprocal

protection."[11]

---

[6]     Fed. R. Civ. P. Supp. R. E(7)(a).

[7]     *See Result Shipping Co. v. Ferruzzi Trading*, 56 F.3d 394, 399 (2d
Cir. 1995) ("Although this Rule initially appears to make the posting of
countersecurity mandatory whenever its conditions are satisfied, the final clause of
the quoted language makes clear that the trial court possesses broad discretion in
deciding whether to order countersecurity under such conditions.").

[8]     *Id.*

[9]     *Id.* (quoting *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403
(5th Cir. 1987)).  *Accord Hanjin Overseas Bulk Ltd. v. CPM Corp.*, No. 08 Civ.
9516, 2009 WL 1360968, at *1 (S.D.N.Y. May 15, 2009).

[10]    *Id. Accord Silver Knot Shipping LTD v. Euro Trust Trading*, No. 08
Civ. 10158, 2009 WL 1309760, at *2 (S.D.N.Y. May 7, 2009).

[11]    *Id.* (quoting *Titan Navigation*, 808 F.2d at 404).

In considering a motion for counter-security, "[t]he trial court may consider the merits of the counterclaim, but it should do no more than screen out totally frivolous claims by the counterclaimant."[12] Additionally, the amount of counter-security is not "limit[ed] to the amount of the security provided by the defendant to secure the plaintiff's claim."[13]

## IV.   DISCUSSION

Global's request for counter-security clearly satisfies the requirements of Rule E(7). Global's counterclaim arises out of the same transaction as Fairport's claim. Additionally, Global has given security for damages in the original action. Despite the fact that the requirements of Rule E(7) are satisfied, the trial court has broad discretion in deciding whether to order countersecurity.[14] After reviewing the submissions of the parties, I conclude that Global is entitled to counter-security for damages resulting from its termination of

---

[12]     *Ocean Line Holdings Ltd. v. China Nat'l Chartering Corp.*, 578 F. Supp. 2d 621, 627 (S.D.N.Y. 2008). *Accord Hanjin Overseas Bulk*, 2009 WL 1360968, at *1; *Navision Shipping Co. A/S v. Dooyang Limited*, No. 08 Civ. 10051, 2009 WL 877630, at *3 (S.D.N.Y. Apr. 1, 2009); *Eastwind Mar., S.A. v. Tonnevold Reefer*, No. 08 Civ. 3292, 2008 WL 4831324, at *3 (S.D.N.Y. Nov. 10, 2008) (quoting *Result Shipping*, 56 F.3d at 400).

[13]     *Pancoast Trading S.A. v. Eurograni S.R.L.*, No. 07 Civ. 8581, 2008 WL 190376, at *1 (S.D.N.Y. Jan. 22, 2008).

[14]     *See Result Shipping*, 56 F.3d at 399.

its charterparty with Sealift — $325,000 that Global paid to Sealift to mitigate Sealift's losses and $496,400 in hire that Sealift refused to pay Global — which apparently was caused by the ineffective repairs made at Iliychevsk, while under Fairport's management. But Global is not entitled to counter-security for lost income or repair costs incurred after its termination of Sealift's charterparty as these expenses do not appear to be reasonably related to Fairport's negligence.

Global alleges that Fairport's failure to properly supervise the repairs at Iliychevsk caused the Vessel to be detained at Antwerp, thereby forcing Global to terminate its charterparty with Sealift.[15] As a result, Global claims it was forced to pay $325,000 to mitigate Sealift's damages, in addition to losing $714,000 in hire.[16] Global has attached its charterparty with Sealift and copies of bank transfers totaling $325,000 made to mitigate Sealift's losses. However, while Global asserts that the Vessel was on charter to Sealift at a rate of $10,500 per day, resulting in $714,000 in lost hire, the charterparty that Global submitted to the Court indicates a rate of only $7,300 per day, amounting to a hire sum of $496,400. As this documentation indicates that Global's claims are not frivolous,

---

[15]   *See* Def. Ans. ¶¶ 18-19.

[16]   *See id.* ¶¶ 21-22.

Global is entitled to counter-security in the amount of $821,400 for these claims.[17]

However, Global is not entitled to counter-security for lost income for the period while the Vessel was undergoing repairs at Piraeus. *First*, Global concedes that it unilaterally terminated its charterparty with Sealift.[18] *Second*, Global has not submitted any documentation indicating that the Vessel would have been on charter to a different party had it not been undergoing repairs. *Third*, the facts of this case suggest that the Vessel would have required repairs once the charterparty with Sealift expired. As the cost of repairing the deficiencies identified at Hamburg and at Antwerp greatly exceeded the amount that Global was invoiced for the repairs at Iliychevsk, the Vessel likely had additional, unrelated defects that required attention. Therefore, Global's claim for lost

---

[17]    Fairport does not argue that Global's counterclaim lacks merit. Rather, Fairport contends that Global's claim is "suspicious" because Global has failed to raise the claim in the nearly two years since the termination of the management agreement. *See* Plaintiff's Memorandum of Law in Opposition to Motion to Vacate or Reduce Maritime Attachment and Compel Countersecurity ("Pl. Mem.") at 18. However, while delay in asserting a claim can be evidence of the claim's insufficiency, delay by itself does not give rise to a presumption that a claim is frivolous. *See Voyager Shipholding Corp. v. Hanjin Shipping Co.*, 539 F. Supp. 2d 688, 692 (S.D.N.Y. 2008) ("[I]t is hardly outside the common experience that during the course of litigation new claims are made, or records are viewed in a different light as a result of repeated intense scrutiny, even apart from the discovery of new evidence.").

[18]    *See* Def. Ans. ¶ 21.

8

income is too speculative to merit counter-security.

        Global is also not entitled to counter-security for the costs of repairing the deficiencies identified by the surveyor at Hamburg and the inspector at Antwerp. Because the invoices that Global submitted at the Court's request are written in Greek, I cannot determine whether these repairs relate to areas of the Vessel that were repaired at Iliychevsk.

        However, even if Global had demonstrated a relationship between the repairs at Iliychevsk and the subsequent repairs, there is no indication that the latter repairs were necessitated by Fairport's negligence, as opposed to an intervening cause or even normal wear and tear. Notably, the Vessel's survey at Hamburg occurred almost an entire year after completion of the repairs at Iliychevsk. Moreover, an additional year elapsed between the survey at Hamburg and the Vessel's eventual detention at Antwerp. Global makes no attempt to refute Fairport's contention that the majority of its damages "relate to the age of the Defendant's vessel and not any negligence on the part of the Plaintiff."[19] Accordingly, Global is not entitled to counter-security for these costs.

        In addition to counter-security for its substantive claims, Global also seeks $1,141,030.48 in interest and $750,000 in costs. However, as I have

---

    [19]    Pl. Mem. at 18.

determined that Global is entitled to counter-security in the principal amount of $821,400, it is only entitled to $197,585.30 in interest and $200,000 in costs.

## V. CONCLUSION

For the foregoing reasons, Global's motion to compel counter-security is granted. Fairport is ordered to post counter-security in the amount of $1,218,985.30 on or before July 23, 2009. If Fairport fails to post this counter-security, this Court's 8/5/08 Order will be vacated. The Clerk of the Court is directed to close this motion (Doc. No. 21).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 13, 2009

10

## - Appearances -

### For Plaintiff Fairport Shipping Limited:

Owen Francis Duffy, III, Esq.
Andrew John Warner, Esq.
Chalos, O'Connor & Duffy, LLP
366 Main Street
Port Washington, New York 11050
(516) 767-3600

### For Defendants Global Dominion S.A. and Leading Finance S.A.:

Peter Skoufalos, Esq.
Brown Gavalas & Fromm, LLP
355 Lexington Avenue
New York, New York 10017
(212) 983-8500